IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | | |
|---|---|---|
| Virginia Reed Robinson, | ) | C/A No.: 1:10-2847-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| Fred Store, Inc., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

In this employment discrimination case, Virginia Reed Robinson ("Plaintiff") is suing her former employer, Fred's Stores of Tennessee, Inc.[1] ("Defendant"). In her complaint, Plaintiff alleges the following causes of action: (1) gender discrimination under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"); (2) marital status discrimination; (3) violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12101, *et seq.* ("ADA"); (4) violation of the Genetic Information Nondiscrimination Act, 42 U.S.C. § 2000ff-1(a), *et seq.* ("GINA"); and (5) violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621, *et seq.* ("ADEA").[2] [Entry #1].

---

[1] Defendant asserts that it has been incorrectly identified as Fred Store, Inc.

[2] Although Plaintiff included race discrimination in her SCHAC charge [Entry #1-1 at 7–8], Plaintiff's complaint does not allege race discrimination and such a claim is not properly before the court. However, because the parties have addressed the issue of race discrimination in discovery and in the briefing, the undersigned addresses it briefly within this order.

This matter comes before the court on Defendant's motion for summary judgment filed by Defendant on November 1, 2012. [Entry #81]. As Plaintiff is proceeding pro se, on November 2, 2012, the court issued an order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), notifying Plaintiff of the dismissal procedure and possible consequences if she failed to adequately respond to the motion for summary judgment. The motion for summary judgment having been fully briefed [Entry #84, #85], it is ripe for disposition.

Pursuant to 28 U.S.C. § 636(c), Local Civil Rule 73.01(B) (D.S.C.), and the Honorable Terry L. Wooten's June 21, 2012, order referring this matter for disposition, this matter has been referred to the undersigned for disposition. [Entry #68]. The parties consented to the undersigned United States Magistrate Judge's disposition of this case, with any appeal directly to the Fourth Circuit Court of Appeals. [Entry #66]. For the reasons that follow, the undersigned grants Defendant's motion for summary judgment.

I.      Factual and Procedural Background

On July 20, 2009, Plaintiff began working at Defendant's Williston, South Carolina store as a Support Manager. [Entry #81-3 at 5]. In October 2009, Defendant changed the title of its Support Managers to Operations Experts, but Plaintiff's responsibilities did not change. [Entry #81-4 at ¶ 11; Pl. Dep. 84:4–17 (Excerpts from Plaintiff's deposition may be found at Entry #81-2)]. Plaintiff was hired with the approval of District Manager Jim Braswell (white male) and Director of Human Resources Gene Pricer (white male). [Entry #81-3 at 5].

2

Plaintiff's responsibilities included assisting the Store Manager with operational and customer service imperatives, merchandising, processing freight, maintaining store conditions, providing customer service, and other duties as assigned by the Store Manager. Pl. Dep 85:22–86:2. At all relevant times, Plaintiff reported directly to the Store Manager, Kevin Forbes (white male). Pl. Dep. 85:1–16. Plaintiff was considered a "key carrier" because she had keys to store and access to money. Pl. Dep. 107:17–108:21. Key carriers are generally held to a higher standard than other employees. *Id*.

Plaintiff's Incident Reports

On September 21, 2009, Plaintiff received a written Incident Report. [Entry #81-3 at 12]. Plaintiff had received three cash variances (i.e. the cash deposit failed to match the daily sales report). *Id*.; Pl. Dep. 118:2–21. She was counseled that further violations would result in further disciplinary action. *Id*. Plaintiff did not write anything on the Incident Report to indicate that she disputed the action. *Id*. Eight days later, on September 29, 2009, Plaintiff received a second written Incident Report for failing to properly and adequately complete refund slips on September 19, 2009. [Entry #81-3 at 13]. That Incident Report noted that Plaintiff had been counseled on multiple occasions about proper procedures when handling paperwork and refund slips and that any further violations would result in disciplinary measures, including up to termination. *Id*. At the time, Plaintiff did not dispute the error, but claimed that she should have been shown her mistakes before they were corrected. *Id.*

3

Plaintiff's Alleged Violation of Defendant's Return Policy

Defendant's Return policy provided guidelines for authorizing exchanges and cash refunds. [Entry #81-3 at 7]. The policy provided that all returns had to be handled at the Customer Service register and approved by management. *Id*. The Employee Purchase policy advised that "under no circumstances should an employee check out his/her own purchase or check out a fellow employee, family member, or friend without management approval." *Id*. at 6. Plaintiff does not dispute that she understood these policies. Pl. Dep. 109:22–110:23. Further, Plaintiff understood that if her husband came into Fred's to make a purchase, she could not check him out, unless Forbes, her manager, told her she could do so. *Id*. She also understood that she could not perform a return or an exchange for a family member without Forbes' approval. *Id*.

On October 17, 2009, Michael Morris (African-American male), who like Plaintiff was an Operations Expert at the Williston store, called Forbes to inform him that Plaintiff had authorized an exchange of a vacuum cleaner for her husband. [Entry #81-5 at ¶ 7]. Upon his return from vacation, Forbes questioned Plaintiff about the vacuum cleaner that had been returned as damaged. Pl. Dep. 136:10–137:6. Plaintiff initially told Forbes that a customer had returned the vacuum cleaner on Monday, October 19, 2009. *Id*. When Forbes pressed her further, Plaintiff admitted that the customer was actually her husband,[3] although she had been separated from him for several months. Pl. Dep. 136:10–137:6, 138:20–25. Plaintiff admitted to Forbes that she had authorized the

---

[3] Plaintiff testified that she did not view him as her husband because, although they were still legally married, they had been separated for eight months and lived in separate households. Pl. Dep. 136:10–137:6.

4

exchange for her husband and that the exchange occurred on October 17, 2009, not the 19th as she had originally indicated. [Entry #81-3 at 14]. According to Forbes, he reviewed the store's video surveillance, which showed Plaintiff's involvement in the exchange for her husband. [Entry #81-5 at ¶ 7]. Although Defendant requires exchanges to be documented, Forbes could not locate any paperwork reflecting the exchange. *Id.* at ¶ 8.

Forbes concluded that Plaintiff had violated Defendant's Return and Employee Purchase policies, which he interpreted to prohibit an employee from being involved in any way with a transaction for family members. *Id.* at ¶ 13. Forbes also believed that Plaintiff had given him misleading information because she was not forthright with him about the vacuum cleaner. *Id.* Based on this incident and the two previous Incident Reports, Forbes believed that Plaintiff's conduct warranted termination. Forbes consulted District Manager Braswell, who had previously approved Plaintiff to be hired as a Support Manager. *Id.* at ¶ 16. Braswell concurred and Plaintiff's employment was terminated effective November 5, 2009. *Id.*

II.     Discussion

   A.     Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[S]ummary judgment will

not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. At the summary judgment stage, the court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Id*. at 255.

A federal court must liberally construe pleadings filed by pro se litigants, to allow them to fully develop potentially meritorious cases. *See Cruz v. Beto*, 405 U.S. 319 (1972), and *Haines v. Kerner*, 404 U.S. 519 (1972). The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine dispute of material fact where none exists. If none can be shown, the motion should be granted. Fed. R. Civ. P. 56(c).

B.   Analysis

1.   Plaintiff's claims pursuant to ADA, ADEA, and GINA

Defendant argues that Plaintiff failed to exhaust her administrative remedies with regard to her claims pursuant to the ADA, ADEA, and GINA. A plaintiff's administrative claim "defines the scope of her subsequent right to institute a civil suit." *Smith v. First Union Nat. Bank*, 202 F.3d 234, 247 (4th Cir. 2000). "If a plaintiff's claims in her judicial complaint are reasonably related to her EEOC charge and can be expected to follow from a reasonable administrative investigation, the plaintiff may advance such claims in her subsequent suit." *Id*. at 247–48. Fourth Circuit case law has generally precluded a subsequent claim where "the EEOC charge alleges discrimination on one

6

basis, such as race, and the formal litigation claim alleges discrimination on a separate basis, such as sex." *Jones v. Calvert Group, Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009). Without exhausting administrative remedies in a Title VII claim, this court is deprived of subject matter jurisdiction. *Id*. at 300–01.

In the instant case, Plaintiff only checked the boxes for race and sex discrimination as the bases of her SCHAC charge. [Entry #1-1]. Additionally, the factual allegations of the charge are not related to age, disability, or genetic information. *Id*. Thus, because Plaintiff has not administratively exhausted her claims based on age, disability, and genetic information discrimination, this court lacks subject matter jurisdiction as to those claims, and they must be dismissed. *See Beane v. Agape Mgmt. Servs., Inc.*, No. 3:08-3445-CMC, 2009 WL 2476629, at *3 (D.S.C. Aug. 11, 2009) (granting motion to dismiss retaliation claim where plaintiff "checked the box for race discrimination in her charge and did not check the box for retaliation").

   2.   Title VII Claims

      a.   Marital Status Discrimination

Plaintiff alleges Defendant discriminated against her based on her marital status. [Entry #1]. Title VII makes it is unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, . . . of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1)(2000). Plaintiff's claim for alleged discrimination based on marital status discrimination fails because marital status is not a protected classification under Title VII. *See Willett v. Emory &*

7

*Henry College*, 569 F.2d 212, 213 (4th Cir. 1987) (alleged discrimination based on marital status did not give rise to a cause of action for sex discrimination under Title VII). Plaintiff has also failed to identify any other statute providing a claim for discrimination based on marital status. Therefore, Defendant is entitled to summary judgment on Plaintiff's claim for marital status discrimination.

b.      Sex Discrimination

In a Title VII claim, absent direct evidence of discrimination, Plaintiff must prove her allegations under the burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and its progeny. Under *McDonnell Douglas*, Plaintiff first must establish by a preponderance of evidence each element of her prima facie case of discrimination. *Id.* at 802. To state a prima facie claim of sex discrimination, Plaintiff must prove: (1) she is a member of a protected class; (2) she was performing satisfactorily; (3) she suffered an adverse employment action; and (4) similarly-situated employees received more favorable treatment. *Coleman v. Maryland Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010).

If Plaintiff establishes a prima facie case, the burden shifts to Defendant to produce a legitimate, nondiscriminatory reason for the adverse employment action. *Texas Dep't. of Cmty Affairs v. Burdine*, 450 U.S. 248, 254 (1981). This is merely a burden of production, not of persuasion. *St. Mary's Honor Ctr v. Hicks*, 509 U.S. 502, 506 (1993).

Once Defendant has met its burden of production by producing a legitimate, nondiscriminatory reason, the sole remaining issue is "discrimination *vel non.*" *Reeves v.*

*Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) (citing *Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 716 (1983)). In other words, the burden shifts back to Plaintiff to demonstrate by a preponderance of the evidence that the legitimate reason produced by Defendant is not its true reason, but was pretext for discrimination. *Reeves*, 530 U.S. at 143. Throughout the burden-shifting scheme set forth in *McDonnell Douglas*, the ultimate burden of proving that Defendant intentionally discriminated against Plaintiff remains at all times with Plaintiff. Plaintiff has the ultimate burden of presenting evidence from which a reasonable jury could conclude Defendant intentionally discriminated against her.

Here, Plaintiff alleged in her complaint that she was discriminated against due to her gender because Forbes and another male employee undermined her by instructing employees to perform tasks other than that which Plaintiff had instructed them to do. [Entry #1 at 5]. However, Plaintiff makes no allegations of direct discrimination and does not appear to allege an adverse employment action other than her termination. *See James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 377 (4th Cir. 2004) (plaintiff's claim that he was excluded from important meetings failed to substantiate how such action adversely affected him); *Munday v. Waste Mgmt. of N. Am.*, 126 F.3d 239, 243 (4th Cir. 1997) (instructing employees to ignore plaintiff is not an adverse employment action where the terms, conditions, or benefits are not adversely affected). Therefore, the undersigned proceeds to analyze Plaintiff's sex discrimination claim as based solely on her termination.

9

Defendant appears to concede that Plaintiff is a member of a protected class and that her termination constitutes an adverse employment action. The undersigned addresses the remaining elements of Plaintiff's prima facie case as follows.

i.      Plaintiff's Job Performance

Defendant first argues that Plaintiff has failed to show a prima facie case because she cannot show that she was satisfactorily performing her job. "Whether an employee is performing at a level that meets legitimate expectations is based on the employer's perception, and [the plaintiff's] own, unsubstantiated assertions to the contrary are insufficient to stave off summary judgment." *King v. Rumsfield*, 328 F.3d 145, 149 (4th Cir. 2003) (stating that plaintiff's own testimony of satisfactory job performance cannot establish a genuine issue as to whether he was meeting his employer's expectations). Factors that employers may focus on in determining whether expectations are being met include an employee's "poor job performance or infractions of company rules." *Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 515 (4th Cir. 2006). In considering whether a claimant was adequately performing her job, it is the perception of the decision maker which is relevant, not the self-assessment of the claimant. *Beall v. Abbott Labs.*, 130 F.3d 614, 619 (4th Cir. 1997), *overruled on other grounds by*, *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105 (2002).

Defendant argues that Plaintiff was not satisfactorily performing her job because she received two Incident Reports during the two months preceding her termination. Plaintiff was counseled about cash variances and incorrectly completing deposit logs.

10

[Entry #81-3 at 12–13].  The second Incident Report noted that Plaintiff had been counseled on numerous occasions about proper procedures in completing paperwork. *Id.*

Although Plaintiff argues in her response that the Incident Reports were inaccurate because she did not work on the days cited, she did not dispute the Incident Reports at the time they were issued.  Pl. Dep. 128:20–130:21. Therefore, even if the Incident Reports were incorrect because Plaintiff had not worked on the dates in question, Plaintiff has not provided any facts to dispute that the decision makers perceived that she was not satisfactorily performing her job based on the Incident Reports that Plaintiff had not disputed. Additionally, although Plaintiff argues in her response that Forbes was trying to make her appear incompetent related to the September 21, 2009 Incident Report [Entry #84 at 2], she admitted in her deposition that she had no evidence that the Incident Report was issued because she was female. Pl. Dep. 128:4–9. Thus, even viewing the evidence in a light most favorable to Plaintiff, leading up to her termination, Plaintiff was not performing at a level that met Defendant's legitimate job expectations. *See Mahomes v. Potter*, 590 F.Supp. 2d 775, 782–83 (D.S.C. 2008) (finding that an employee who had accumulated multiple disciplinary infractions in a relatively short period was not meeting her employer's legitimate expectations).

### ii.     Treatment of Similarly-Situated Employees

Defendant argues that Plaintiff has also failed to show that a similarly-situated employee outside of the protected class that was treated more favorably.  When a plaintiff bases her discrimination claim on a similarly-situated comparator, it is the plaintiff's task to demonstrate that the comparator is indeed similarly situated. *Tex. Dep't. of Cmty.*

*Affairs v. Burdine*, 450 U.S. 248, 258 (1981)). Plaintiffs are required to show that they are similar in all relevant respects to their comparator, bearing in mind that "[t]he similarity between comparators and the seriousness of their respective offenses must be clearly established in order to be meaningful." *Lightner v. City of Wilmington*, 545 F.3d 260, 265 (4th Cir.2008).

Here, Plaintiff testified at her deposition that Morris once exchanged a defective flashlight for his cousin-by-marriage, but admits that she did not report the incident to Forbes. Pl. Dep. 178:6–18, 182:1–9. Plaintiff has provided no evidence showing that Forbes was aware of the alleged incident in which Morris allegedly exchanged an item for his cousin-by-marriage. *Id*. Therefore, Plaintiff has not shown that Forbes knowingly treated Morris differently for the same alleged conduct. Further, although Plaintiff alleges that Morris and Forbes "talked more constantly" and "cut up," Pl. Dep. 174:3–9, such allegations are insufficient to show that she was treated differently based on her gender. Title VII does not protect mere allegations of favoritism. *Holder v. City of Raleigh*, 867 F.2d 823 (4th Cir. 1989). Because Plaintiff has failed to identify a similarly-situated comparator, her Title VII claim fails.

### iii. Pretext Analysis

Even assuming Plaintiff were able to establish a prima facie case of discrimination, summary judgment is still appropriate because Defendant has proffered a legitimate, nondiscriminatory reason for her dismissal: she was terminated for violating the policy prohibiting employees from handling exchanges or refunds for family members without a manager's approval and for not being immediately forthright about

12

her conduct. [Entry #81-5 at ¶ 16]. "At this point, the burden to demonstrate pretext merges with the ultimate burden of persuading the court that the plaintiff has been the victim of intentional discrimination." *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 285 (4th Cir. 2004) (internal citations omitted). In order to satisfy this burden, it is not sufficient for Plaintiff to show merely that Defendant's asserted reason is false; rather, Plaintiff must show "both that the reason was false, and that discrimination was the real reason." *St. Mary's Honor Ctr.*, 509 U.S. at 515–16. Here, the undersigned finds that Plaintiff has failed to identify a genuine dispute of material fact as to whether her termination was the result of intentional discrimination.

Plaintiff has failed to submit evidence that Defendant's reason is merely pretext for discrimination. Plaintiff instead argues that she did not actually violate the policy because: (1) she and her husband had been living apart for months and should not be considered family members; and (2) she was the acting-manager in Forbes' absence and approved the exchange in her role as acting-manager. [Entry #84 at 2–3]. Central to Plaintiff's argument is the assertion that she did not actually violate the policy. However, it is not necessary for a court to "decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for [the defendant's decision]." *Hawkins v. Pepsico*, 203 F.3d 274, 279 (4th Cir. 2000). Here, Plaintiff has not provided sufficient evidence for a reasonable fact finder to find that Defendant's reason for her termination was simply pretext for discrimination. Therefore, Defendant's motion for summary judgment is granted as to Plaintiff's claim for sex discrimination.

13

        c.      Race Discrimination

As previously noted, Plaintiff's complaint contains no allegations of race discrimination.[4] However, even if Plaintiff had properly brought a claim for race discrimination, Plaintiff's claim would fail for the same reasons as her sex discrimination claim. Significantly, Plaintiff testified that Forbes did not treat white employees more favorably than he treated her. Pl. Dep. 127:21–128:3. Plaintiff has not alleged that anyone else working for Defendant discriminated against her based on her race. Therefore, Plaintiff has provided no evidence that Defendant discriminated against her based on her race.

III.    Conclusion

For the foregoing reasons, Defendant's motion for summary judgment [Entry #81] is granted.

IT IS SO ORDERED.

August 21, 2013                                    Shiva V. Hodges
Columbia, South Carolina                   United States Magistrate Judge

---

[4] Plaintiff's SCHAC charge alleges she was initially denied a Store Manager position with Defendant because she is a black female. [Entry #1-1 at 7]. However, Plaintiff's complaint is silent as to any allegations regarding failure to hire, and Plaintiff testified at her deposition that she was not suing Defendant related to failure to hire her for the Store Manager position. Pl. Dep. 70:17–20.